BENTON et al. *v.* CANAL INSURANCE COMPANY, GARNISHEE-APPELLEE

No. 41887 June 5, 1961 130 So. 2d 840

*Travis & McKee, Cox & Dunn,* Jackson, for appellants.

*Satterfield, Shell, Williams & Buford,* Jackson, for appellee.

KYLE, J.

This case is before us on appeal by Emmett Benton (The Western Casualty & Surety Company, Assignee), and Howard M. Polk from a final judgment of the Circuit Court of the First Judicial District of Hinds County dismissing with prejudice a writ of garnishment against the appellee Canal Insurance Company.

The record shows that Eugene Stubbs, doing business as Stubbs & Grubbs, had a contract to haul steel to various destinations from Mississippi Steel Corporation. Stubbs secured an automobile liability insurance policy from Canal Insurance Company covering liability

to third persons, which insurance policy excluded his employees. Mississippi Steel Corporation was the owner of a comprehensive general liability policy from The Western Casualty Insurance Company, which will be hereinafter referred to as "Western Casualty", covering general liability of the Steel Corporation for injuries to third parties under its premises.

Emmett Benton, an employee of Stubbs, was employed to drive a truck belonging to Stubbs. On or about April 4, 1959, Benton went upon the premises of Mississippi Steel Corporation for the purpose of obtaining a load of steel. While the truck belonging to Stubbs and being driven by Benton or another driver employed by Stubbs was being loaded with steel by Howard Polk, an employee of the Steel Corporation by means of a heavy hoist or crane which was operated and controlled by Polk, a steel plate or rail or other part on the crane came loose and fell striking Benton on the head. Benton was not actively assisting in the operation of the crane at the time he was injured.

Benton sued Mississippi Steel Corporation and Polk for damages for personal injuries caused by the steel plate or rail striking him on his head, and alleged in his declaration that the steel plate or rail had fallen from the crane on prior occasions.

The truck (tractor and trailer), belonging to Stubbs and being loaded on the premises of the Steel Corporation at the time of Benton's injury, was one of the vehicles insured under the automobile liability insurance policy No. 343681 issued by Canal Insurance Company to Stubbs as the named insured, for the period beginning January 1, 1959, and ending January 1, 1960; and on August 13, 1959, Howard Polk called upon Canal for protection as an additional insured under the policy issued to Stubbs. Thereafter a series of letters passed between the attorneys for Howard Polk and the attorneys for Canal relative to Canal's alleged liability to

Polk as an additional insured under the above mentioned policy. The effect of this correspondence was that Polk tendered the defense of the suit against him by Benton to Canal and demanded protection under Canal's policy issued to Stubbs. Canal refused to defend the suit or accept any responsibility therefor. Polk then employed Travis & McKee, attorneys of Jackson, to handle the defense of the suit for him, and Canal was advised that Polk expected Canal to pay the expenses incurred by him in defending the suit and the judgment, if any, which might be obtained against him. However, before the case was tried, the parties reached a tentative agreement for a settlement of the damages suffered by the plaintiff, Benton, on account of the above mentioned injury. Canal was advised of this tentative agreement, and again requested to assume its obligation to defend the suit, but again refused to do so. The amount of liability on the part of Polk to Benton was reserved to be decided upon at the trial. The trial was had, a jury being waived, on October 8, 1959, and resulted in a final joint and several judgment for the plaintiff Benton against the defendant, Mississippi Steel Corporation, and the defendant, Howard Polk. The judgment against Polk was rendered by virtue of his negligence, and the judgment against the Steel Corporation was rendered by virtue of its liability under the doctrine of respondeat superior.

Execution was ordered issued, and the plaintiff Benton secured an execution against Polk and filed a suggestion for a writ of garnishment against Canal Insurance Company, requiring an answer by Canal Insurance Company, as to any indebtedness which it might owe to the appellant Polk. The writ of garnishment was duly issued and served upon Canal. Thereafter Western Casualty & Surety Company, insurer of Mississippi Steel Corporation under a comprehensive general liability policy, purchased the judgment for $4,000 rendered in favor

of the plaintiff Benton and took an assignment of the judgment. The assignment authorized Western Casualty to proceed for the collection of the judgment in the name of Benton, the judgment creditor, and Western Casualty proceeded as assignee in the name of Benton, and Howard Polk proceeded in his own right against the garnishee Canal. Canal answered the writ of garnishment, and in its answer denied that it was indebted to Polk or to the Steel Corporation. The answer was contested by Western Casualty and Polk. Interrogatories were propounded by the garnishee to the defendant Polk and to the garnishor Emmett Benton; and these interrogatories were answered. Interrogatories were also propounded by the garnishee to the Steel Corporation, but these interrogatories were not answered, for the reason that the Steel Corporation was not a party to the garnishment. Motions were filed by the respective parties to require the production of the insurance policies issued by Canal to Stubbs and by Western Casualty to the Steel Corporation, for inspection.

The pleadings having been settled, issue was joined on the garnishee's answer and the contest filed by Western Casualty, assignee, and Polk, the issue being whether or not the garnishee Canal Insurance Company was indebted to the defendant and judgment debtor Howard Polk by virtue of Canal's automobile liability insurance contract No. 343681, issued to Stubbs & Stubbs, and by virtue of the judgment having been rendered against Howard Polk and the alleged resulting liability of Canal to Polk under the terms of said policy.

At the conclusion of the hearing the circuit judge rendered a written opinion, in which he stated that the insurance contract contained in the policy issued by Canal to Stubbs was plain and unambiguous so far as the insured employees were concerned, and that in his opinion the case was controlled by the opinion of this Court in Continental Casualty Company v. Pierce, 170 Miss. 67,

154 So. 279. A judgment was therefore entered dismissing with prejudice as to the plaintiff Emmett Benton (Western Casualty Insurance Company, assignee) and Howard Polk, judgment debtor, the writ of garnishment against Canal Insurance Company.

The appellants' attorneys have assigned and argued two points as grounds for reversal of the judgment of the lower court: (1) That the court erred in dismissing the writ of garnishment issued against Canal Insurance Company, garnishee, with prejudice to the Western Casualty & Surety Company, assignee of the plaintiff Emmett Benton, and Howard Polk, judgment debtor, and in failing to enter judgment against the garnishee; and (2) that the court erred in failing to enter judgment in favor of the appellant Howard Polk against the appellee-garnishee for attorneys' fees and costs of court incurred by the appellant Howard Polk in defending the suit against him by Emmett Benton.

The applicable provisions of the Canal policy, which are involved in the garnishment proceeding which we have under review in this case, are:

"Under 'DECLARATIONS'

"Item 5. The purposes for which the automobile is to be used are 'pleasure and business' unless otherwise stated herein: Commercial. (a) The term 'pleasure and business' is defined as personal, pleasure, family and business use. (b) The term 'commercial' is defined as use principally in the business occupation of the named insured as stated in Item 2, including occasional use for personal, pleasure, family and other business purposes. (c) Use of the automobile for the purposes stated includes the loading and unloading thereof.

"Under 'INSURING AGREEMENTS'

"I. *Coverage A—Bodily Injury Liability*: To pay on behalf of the insured all sums which the insured shall

become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance, or use of the automobile.

"II. *Defense, Settlement, Supplementary Payments*: With respect to such insurance as is afforded by this policy for bodily injury liability and for property damage liability, the company shall:

(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;

"Under 'INSURING AGREEMENTS'

"III. Definition of Insured: (a) with respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured, and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either. * * *.

"Under 'EXCLUSIONS'

"This Policy Does Not Apply:
"* * *.

"(d) under Coverage A, to bodily injury to or sickness, disease, or death of any employee of the insured arising out of and in the course of (1) domestic employment by the insured, if benefits therefor are in whole or in part either payable or required to be pro-

vided under any workmen's compensation law, or (2) other employment by the insured;

"* * *

"(e) under Coverage A, to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

"* * *

"Under 'CONDITIONS'

"* * *

"4. Severability of Interests—Coverages A and B: The term 'the insured' is used severally and not collectively, but the inclusion herein of more than one insured shall not operate to increase the limits of the company's liability.

"* * * *"

In support of their first assignment of error the appellants' attorneys say that Polk, under the terms of the policy issued by Canal, became an omnibus (additional) insured, when he "used" the Stubbs vehicle with Stubbs' permission by loading it with steel; that Polk was an insured under the policy by virtue of having so "used" the insured vehicle. The appellants' attorneys say that Benton was never at any time an employee of Polk, and that Benton's injury was therefore not excluded from the coverage of the policy by paragraph (d) of the "EXCLUSIONS", and, therefore, when judgment was rendered against the insured Polk, in which it was adjudicated that Polk had been guilty of negligence in loading the insured vehicle and that such negligence proximately caused the injury to Benton, Canal Insurance Company became liable for the amount of the judgment, court costs, and attorneys'

fees, since Canal had refused to defend their insured Polk.

In answer to the above mentioned contentions made on behalf of the appellant Polk, the attorneys for the appellee say that the appellants, Western Casualty and Polk, failed to meet the burden of proof of showing that Benton's injury came within the loading and unloading clause of the canal policy and that Polk was an additional insured under the terms and conditions of the Canal policy. The appellees' attorneys also say that any injuries Benton may have received were excluded from the coverage of the Canal policy under paragraph (d) of the ''EXCLUSIONS'' by reason of the fact that Benton was an employee of the insured Stubbs at the time of his injury.

Western Casualty and Polk admit that Benton was an employee of employer Stubbs at the time of his injury. However, Western Casualty and Polk say that Polk was an additional insured under the omnibus clause of the policy issued by Canal to Stubbs, and therefore Benton was not excluded from the coverage of the Canal policy, inasmuch as he was not an employee of Polk, the additional insured. They say that the phrase ''any employee of the insured'', as used in the Exclusion Clause of the Canal policy, should be interpreted in accordance with the ''Severability of Interest'' clause and should be construed to mean ''any employee of the insured against whom a claim is made or suit is brought.'' The attorneys for Western Casualty and Polk admit, and the attorneys for Canal agree, that there is a conflict of authority on this point. The attorneys for Canal, however, say that, regardless of what the law may be in other jurisdictions, this Court has held that under the terms of an insurance policy containing the clauses outlined above the employees of the named insured are excluded from the coverage of the policy regardless of the additional insureds included therein; and the attor-

neys for Canal cite in support of that statement the case of Continental Casualty Company v. Pierce, 170 Miss. 67, 154 So. 279.

Benton testified during the hearing upon the contest of the answer of the garnishee that he was employed by Stubbs, and that he was standing "under the shelter there where they were loading steel," and something hit him on the head—something that "came off the crane," which was being used in the loading of the steel. Benton stated that Mr. Howard Polk was operating the crane; that he himself had nothing to do with operating the crane, but he had helped a few times; that he had hooked the cable on the steel, but at the time the accident happened, he "was not doing anything, but standing there—watching them swing the crane back." Benton stated that he was on the premises of the Steel Corporation at that time as an employee of Stubbs waiting for the loading of the truck; that he had been sent there to attend the loading of the steel, which he was to transport to the point of delivery the next day; and that he was on Stubbs' payroll at the time he was injured. Benton's testimony clearly shows that the truck was being loaded by Polk with the permission of Stubbs the named insured, and that Benton was engaged in the performance of his duties as an employee of Stubbs at the time of his injury.

We think the trial judge was correct in his holding that the injury to Benton, an employee of the named insured Stubbs, was excluded from the coverage of the Canal policy.

In the case of Continental Casualty Company v. Pierce, supra, the Court had under consideration an automobile liability policy very similar to the policy involved in this case; and in a carefully written opinion by Judge Anderson, the Court held that a liability policy expressly excluding liability for injuries to the insured's employees, but insuring "any person * * * operating * * * such auto-

mobile'' against liability, did not cover liability of one operating the automobile as driver for the insured for injuries to an employee of the insured. In its opinion in that case the Court said:

''It is a cardinal principle of construction that a contract is to be construed as a whole; that all its parts are to be harmonized so far as reasonably possible; that every word in it is to be given effect, if possible; and that no part is to be taken as eliminated or stricken by some other part unless such a result is fairly inescapable. So construing the contract of insurance in this case, Mrs. Easterling's policy insured her against liability to third persons, except as to a third person who was an employee of hers, and it also included as an insured any person, not an employee of hers, who was riding in or operating the automobile with her permission; but this left standing all the while, and unaffected, the provision that the policy did not cover liability for injury to an employee of hers. There is nothing in the provision touching additional insureds which requires, or even justifies, the elimination or striking out of the previous provision that the policy did not cover an injury to an employee of Mrs. Easterling. * * *. A person invited or permitted by Mrs. Easterling to ride in or operate the automobile would thereby become an additional insured, but it would require the writing into the policy of something which is not there, and the striking out of something which is there, to hold that the coverage of the policy included an employee of hers who, according to the terms of the policy, was expressly excluded therefrom.

''The construction contended for by appellee is not a reasonable one. It is hard to conceive that an insurance company would write a policy of that kind. For illustration: If Mrs. Easterling had been driving the automobile accompanied by appellee, her employee, and the latter had been injured by her negligent driving, clearly

the policy would not have protected Mrs. Easterling against liability for such injury, because it expressly so provides. But according to appellee's contention, the policy does insure Mrs. Easterling's servant, John Toney, against liability for an injury to appellee resulting from his negligent driving. In other words, Mrs. Easterling, who procured the policy and paid the premium therefor, would not be insured, while her servant, John Toney, who had nothing to do with procuring the policy, would be insured. We are of opinion that the contract bears no such construction.''

In the case that we have here, the policy issued by Canal to Stubbs was written for the benefit of Stubbs to protect him from liability for injuries to third parties. The policy excluded coverage for injuries to Benton, an employee of Stubbs, the named insured. Western Casualty and Polk were not parties to the contract of insurance and had nothing to do with the writing of the policy. Polk was not a named insured. Polk was an employee of the Steel Corporation. He claims under the Canal policy only as an additional insured under the general language of Insuring Agreement III. Under these circumstances it seems strange indeed that Polk should claim, or that there should be claimed for him, more protection under the policy of Stubbs than Stubbs, the named insured, who paid for the policy, could claim for himself. Yet Polk and Western Casualty, as Benton's assignee, now seek to recoup from Stubbs' insurance carrier the amount of the judgment rendered against Polk and his employer in favor of Benton for injuries suffered by Benton as a result of the negligence of Polk and his employer, by having the court construe the words ''any employee of the insured'', as they appear in the Exclusions clauses of Canal's policy, to mean ''any employee of the insured against whom liability is sought to be imposed.'' This we cannot do. ▉ ▉ The language of the policy is unambiguous. Since the language

is plain and unambiguous there is no occasion for construction, and the language must be given its plain meaning. As stated by this Court in Adams et al. v. Maryland Casualty Company, 162 Miss. 237, 139 So. 453, ██ ''One who is not a party to a contract, but for whose protection the policy provides, can stand only upon the terms of the contract, and if he does not bring himself within the terms of the contract, there is no liability in his favor.''

In the case of Simpson v. American Automobile Insurance Company, et al., Mo. App. 327 S. W. 2d 519 (1959), a case very similar on its facts to the case that we have here, the Court held that under a public liability policy defining insured to include the named insured and any person using a vehicle with the named insured's permission and withdrawing from coverage bodily injury to any employee of the insured while engaged in the employment of the insured, the policy did not cover an injury sustained by an employee of the named insured through the alleged negligence of another employer's employee, an additional insured, while loading the vehicle, and the insurer was not obligated to defend the suit brought by another employer of the employee, whose alleged negligence caused the injury of the insured's employee, nor was the insurer obligated to defend the suit of the employee of the insured against the employer of the employee whose negligence allegedly caused the injury. In its opinion in that case, the Court said: ''There is only one contract of insurance contained in American's policy and it must be construed as a whole. The additional insureds cannot claim coverage under the omnibus clause, which gives them coverage as additional insureds through the definition of insureds, and then seek to ignore that very definition that gives them coverage, when considering the exclusion clause. The contention of appellants is unsound.''

In Transport Insurance Co. v. Standard Oil Co. of Texas (Sup. Ct. Tex. 1960), 337 S. W. 2d 284, the Court held that a standardized automobile liability policy which specifically excluded any obligation for which the insured or any carrier as its insurer may be held liable under any workmen's compensation law, and which also excluded coverage for bodily injury to any employee of the insured arising out of and in the course of employment by the insured, gave no coverage in respect to the named insured's employee's personal injury claim against an additional insured using the insured vehicle with the named insured's consent, notwithstanding that the policy contained a "severability of interests" clause, where the workmen's compensation insurance carrier of the named insured had been held liable under the Workmen's Compensation Act for injuries sustained by the employee. In its opinion in that case the Court said:

"The exact question involved is one of first impression in this jurisdiction. There is a split of authority in other jurisdictions, but the weight of authority is that if the injured party is the employee of any person who is insured under the policy, the employee exclusion is applicable although he may not have been an employee of the person committing the tort. See 50 A. L. R. 2d 99. The cases which support Transport's contention follow the weight of authority and apply the language of the policy as written. See American Fidelity & Casualty Co. v. St. Paul-Mercury Indemnity Co., 5 Cir. 248 F. 2d 509 (Alabama 1957) and cases therein cited; Travelers Ins. Co. v. Ohio Farmers Indemnity Co., D. C., 157 F. Supp. 54, affirmed in 6 Cir., 262 F. 2d 132; Webb v. American Fire & Casualty Co., 148 Fla. 714, 5 So. 2d 252 (Florida); Continental Casualty Co. v. Pierce, 170 Miss. 67, 154 So. 279 (Mississippi); Standard Surety & Casualty Co. of New York v. Maryland Casualty Co., 281 App. Div. 446, 119 N. Y. S. 2d 795 (New York); Birrenkott v. McManamay, 65 S. D. 581, 276 N. W. 725

(South Dakota); Associated Indemnity Corp. v. Wach-
smith, 2 Wash. 2d 679, 99 P. 2d 420, 127 A. L. R. 531
(Washington); Simpson v. American Automobile Ins.
Co. et al., Mo. App. 327 S. W. 2d 519, 17 Automobile
Cases 2d 1212, Number 19-32 (Missouri) and cases
cited.''

The Court then referred specifically to the ''severa-
bility of interests'' clause, contained in the two standard-
ized policies involved in that case, and the Court said:
''The addition of the 'severability of interests' clause
does not indicate that the drafters of the policy form by
the addition of such clause intended that the word 'in-
sured' means *only* the person claiming coverage. We
cannot adopt Standard's theory that by severing the
interests in the case at bar, Standard is an insured under
the 'omnibus clause' contained in the policy; the basis
for Standard's contention being that the 'severability of
interests' clause warrants the addition after the word
'insured' the words 'the insured who is asking for a de-
fense' or 'the insured against whom the claim is made.''
* * * We have concluded that the 'severability of in-
terests' clause in the present policy cannot alter the hold-
ings in the cases relied upon by Transport. * * * In
the policy involved here there is no ambiguity in the
exclusion clauses and no inconsistency is shown between
the exclusionary clauses and the 'severability of inter-
ests' clause in the policy. The clear and unambiguous
terms of the policy leads us to hold that no employee of
the named insured engaged in the named insured's busi-
ness can recover on the named insured's policy against
anyone included as an additional insured.''

 We think there is no ambiguity in the exclusion
clauses of the Canal policy. We also think that the ad-
dition of the ''severability of interests'' clause does not
indicate that the drafters of the policy form by the addi-
tion of that clause intended that the words ''any em-
ployee of the insured'', as they appear in the exclusion

clauses, should mean "any employee of the insured against whom liability is sought to be imposed." We therefore hold, as the Court did in the Transport Insurance Company case, supra, that no employee of the named insured engaged in the named insured's business can recover on the named insured's policy against anyone included as an additional insured.

We find no reversible error in the record and the judgment of the lower court is therefore affirmed.

Affirmed.

*Lee, P. J.,* and *Arrington, Ethridge* and *Gillespie, JJ.,* concur.

GILLESPIE, J. concurring:

I concur in all that is decided in the opinion but do not desire my concurrence to be construed as a holding that Polk was an additional insured under the terms of the Canal policy.

I do not think that the injuries to Benton arose out of "the ownership, maintenance, or use" of the truck. The unloading clause does not make Polk an insured here. Polk was operating a crane belonging to Mississippi Steel Corporation and the ownership, use and maintenance of the truck had nothing to do with the object falling on Benton's head. The truck was passively sitting there and played no part directly in the injury. My views that Polk was not an additional insured may be regarded as an additional reason for my concurrence in the results.